Law Revision

IN THE SUPERIOR COURT OF GUAM

FILED
SUPERIOR COURT
OF GUAM

GIN HAI SHAN PARTNERSHIP,

    Plaintiff,

vs.

COBBLESTONE SQUARE, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. CV0147-07

CLERK OF COURT

DECISION AND ORDER

This matter came before the HONORABLE VERNON P. PEREZ on December 31, 2008 for a hearing on Plaintiff's Motion for Partial Summary Judgment for Breach of Contract, Slander of Title, Libel, and Declaratory Relief (hereinafter "Motion for Partial Summary Judgment"). Present at the hearing were Attorney Joyce C.H. Tang, representing Plaintiff, Gin Hai Shan Partnership and Attorney Anita Arriola, representing Defendant, Cobblestone Square, Inc. The Court took the matter under advisement. Having considered the Parties' arguments, considering the Parties' pleadings and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On January 15, 1986, Cobblestone Square, Inc., Celestino Geronimo and Corazon Geronimo, (hereinafter "Defendant"), entered into a written lease agreement with Fukuya Guam Inc., (hereinafter "Fukuya"). The written lease agreement (hereinafter "Lease") was for certain property identified as:

> Lot Nos. 5137-2-R2-1, 2, 3, and 4 (Subdivision of Lot 5137-2-R2), Municipality of Dededo, Territory of Guam, Estate No. 20256, Suburban, as said lot is marked and designated on Drawing No. 207-338, as recorded on January 10, 1972, in the Department of Land Management, Government of Guam, under Document No. 108232. Last Certificate of Title No. 60321, 62287, 31283 and 31284 Area: 11,882 square meters±.

See, Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment. The term of the Lease was for fifty (50) years commencing on February 1, 1986 and ending on January 31, 2036. Paragraph 14 of the Lease permitted the Lessee the right to freely assign and sublet its leasehold interest without the written consent of the Lessor, once completion of improvements on the property were finished.

On December 28, 1995, Gin Hai Shan Partnership, (hereinafter "Plaintiff"), entered into an Assignment of Lease agreement in which Fukuya, as Assignor, assigned to Plaintiff, as Assignee, all of its' right, title and interest in the Lease. (See, Exhibit "B" attached to the Motion for Partial Summary Judgment). The Assignment of Lease covered the property so described in the Lease, now commonly known as the Fountain Plaza Building. Thereafter, Plaintiff entered into lease agreements with various sub-tenants, who conduct retail, restaurant and entertainment businesses at Fountain Plaza Building. At some point in time, Plaintiff executed a mortgage in favor of First Commercial Bank on the Fountain Plaza Building.

On September 1, 2006, Defendant's counsel sent a Delinquent Rents Under Lease from Cobblestone Square, Inc., demand letter to Plaintiff, demanding delinquent rent payments for the amount of $205,860.65. (See, Exhibit "A" attached to the Opposition). The demand letter gave Plaintiff thirty days to pay rent or pursuant to Paragraph 12, as well as Paragraph 3(d) of the Lease, Plaintiff would be found in default and the lease would be subject to termination. The demand letter showed, on the bottom of the page, that a copy had been sent to First Commercial Bank and Fukuya.

On January 9, 2007, Defendant sent to Plaintiff a "Notice to Pay Rent or Quit" which demanded that Plaintiff pay past rent due in the amount of $132,721.39 within five days or legal action would commence. (See, Exhibit "B" attached to the Opposition). The Notice to Pay Rent

or Quit was also addressed to Fukuya and certain sub-tenants listed in Attachment "A" to the notice. Attachment "A" to the notice contained a list of ten businesses, presumably Plaintiff's sub-tenants at the Fountain Plaza Building. The Notice to Pay Rent or Quit showed, on the bottom of the page, a copy going to First Commercial Bank. The Statement of Account attached to the notice showed rental amounts that were owed by Plaintiff to Defendant, which dated back to November, 2005.

On January 29, 2007, Defendants served upon Plaintiff a "Notice to Perform Covenant of Lease With Respect to Payment of Taxes or Quit" (hereinafter "Notice to Pay Taxes or Quit"). The Notice to Pay Taxes or Quit set forth that Plaintiff had failed to pay property taxes assessed upon improvements to the leased premises for the Calendar Year 2005, payable in February and April of the Calendar Year 2006. The Notice to Pay Taxes or Quit required Plaintiff within three (3) days of the date of service, to pay the taxes along with interest and penalties and to "obtain a reconveyance of such property from any conveyance or sale of such property by reason of such nonpayment of taxes or to deliver possession of the premises" back to Defendant. (See, Exhibit "C" to the Motion for Partial Summary Judgment). The Notice to Pay Taxes or Quit was addressed to Fukuya, Plaintiff and sub-tenants listed in Attachment "A". Attachment "A" listed some nine businesses that presumably were Plaintiff's sub-tenants at the Fountain Plaza Building. The bottom left hand corner of the Notice to Pay Taxes or Quit showed that a copy had been sent to First Commercial Bank located in Hagatna, Guam.

Attached to the Notice to Pay Taxes or Quit was a Department of Revenue & Taxation, Real Property Tax Division, Taxpayer's Copy, Property Tax Statement document (hereinafter "Revenue & Taxation document") that was addressed to Fukuya in care of Plaintiff. The Revenue & Taxation document showed that a total of $14,586.46 was owed, which included a

building tax amount owed at $13,759.86 and a penalty/fee amount owed of $826.60. Stamped, twice, on the front of the Revenue & Taxation document were the words "TAX SOLD PROPERTY".

On February 1, 2007, Plaintiff filed a Complaint for Breach of Contract, Slander of Title, Libel, and Declaratory Relief (hereinafter "Complaint"). On February 22, 2007, Defendant filed an Answer to the Complaint. On July 30, 2008, Plaintiff filed an At Issue Memorandum. In the At Issue Memorandum, Plaintiff set forth that a jury trial was not demanded. On August 11, 2008, Plaintiff filed the Motion for Partial Summary Judgment. On September 5, 2008, Defendant filed Defendant Cobblestone Square, Inc.'s Opposition to Motion for Partial Summary Judgment (hereinafter "Opposition"). In the Opposition, Defendant requested, under G.R.C.P. Rule 56(f), additional time to present facts that are essential to the opposition to the motion. On September 12, 2008, Plaintiff filed a Reply to Opposition to Motion for Partial Summary Judgment (hereinafter "Reply"). On December 31, 2008 a hearing was held on the Motion for Partial Summary Judgment. The Court took the matter under advisement.

On February 27, 2007, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on February 1, 2007. (See, Exhibit "C" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya. On March 6, 2007, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc., demand letter to Plaintiff for rent owed on March 1, 2007. (See, Exhibit "D" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya.

On April 13, 2007 Defendant served upon Plaintiff another five day Notice to Pay Rent or Quit for rents owed in for March 2007 and interest. (See, Exhibit "E" attached to the

Opposition). The notice was also addressed to Fukuya and certain sub-tenants listed in Attachment "A" to the notice. Attachment "A" to the notice contained a list of nine businesses, presumably Plaintiff's sub-tenants at the Fountain Plaza Building. The Notice to Pay Rent or Quit showed, on the bottom of the page, a copy going to First Commercial Bank.

On April 13, 2007, Defendant served upon Plaintiff another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter for rent owed on April 1, 2007 and for interest due on the delinquent payment of rent due on February 1, 2007, which was not paid until March 27, 2007. (See, Exhibit "F" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya. On May 8, 2007, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc., demand letter to Plaintiff for rent owed on May 1, 2007 and for interest due on the delinquent payment of rent due on March 1, 2007, which was not paid until April 18, 2007. (See, Exhibit "G" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya.

On May 18, 2007, Defendant sent another five day Notice to Pay Rent or Quit to Plaintiff for April rent, plus interest for delinquent rents owed on February 1, 2007 but not paid until March 27, 2007. (See, Exhibit "H" attached to the Opposition). The notice was also addressed to Fukuya and certain sub-tenants listed in Attachment "A" to the notice. Attachment "A" to the notice contained a list of eight businesses, presumably Plaintiff's sub-tenants at the Fountain Plaza Building. The Notice to Pay Rent or Quit showed, on the bottom of the page, a copy going to First Commercial Bank.

On June 21, 2007 a Complaint for Unlawful Detainer was filed by Defendant against Plaintiff for failure to pay $66,069.03 in past due rent and interest due on later rental payments. (See, Paragraph 10 of the Declaration of Mark E. Cowan In Support of Defendant Cobblestone

Square, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment (hereinafter "Cowan Declaration")). Plaintiff paid the past due rents after the lawsuit was filed.

On August 17, 2007, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on August 1, 2007. (See, Exhibit "I" attached to the Opposition). The demand letter also sought interest for the rent payment owed on July 1, 2007 which was not paid until August 6, 2007, late interests on other installments and attorney's fees. The demand letter showed a copy going to First Commercial Bank and Fukuya.

On September 28, 2007, Plaintiff sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on September 1, 2007 and for interest on the rent payment owed for August 1, 2007 which was not paid until September 12, 2007. (See, Exhibit "J" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya. On November 14, 2007 Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on October 1, 2007 and November 1, 2007 and for interest on the rent payment for September 1, 2007, not paid until October 12, 2007. (See, Exhibit "K" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya.

On December 6, 2007, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on December 1, 2007. (See, Exhibit "L" attached to the Opposition). The demand letter showed a copy going to First Commercial Bank and Fukuya. On December 6, 2007, Defendant sent a letter to Plaintiff demanding the payment of attorney's fees and costs associated with Plaintiff's repeated default

in payment of rents. (See, Exhibit "M" attached to the Opposition). A copy of the letter was sent to First Commercial Bank and Fukuya.

On December 6, 2007 Defendant sent another five day Notice to Pay or Quit to Defendant for the payment of attorney fees, costs and interests. (See, Exhibit "N" attached to the Opposition). The notice was also addressed to Fukuya and certain sub-tenants listed in Attachment "A" to the notice. Attachment "A" to the notice contained a list of eight businesses, presumably Plaintiff's sub-tenants at the Fountain Plaza Building. The Notice to Pay Rent or Quit showed, on the bottom of the page, a copy going to First Commercial Bank.

On January 10, 2008, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on January 1, 2008. (See, Exhibit "O" attached to the Opposition). The demand letter also sought: interest on the delinquent rent owed for October 1, 2007 and not paid until December 14, 2007; delinquent rent owed for November 1, 2007 and not paid until December 14, 2007; and delinquent rent owed for December 1, 2007 and not paid until January 4, 2007. A copy of the demand letter was sent to First Commercial Bank and Fukuya. On February 14, 2008 Defendant another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on February 1, 2008 and for interest owed on delinquent rent owed for January 1, 2008, and not paid until February 8, 2008. (See, Exhibit "P" attached to the Opposition). A copy of the demand letter was sent to First Commercial Bank and Fukuya.

On March 17, 2008, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on March 1, 2008 and for interest on the delinquent rent owed on February 1, 2006, which was not paid until March 14, 2008. (See, Exhibit "Q" attached to the Opposition). A copy of the demand letter was sent to

First Commercial Bank and Fukuya. On April 18, 2008, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on April 1, 2008 and for interest on the delinquent rent owed on March 1, 2006 and not paid until April 16, 2008. (See, Exhibit "R" attached to the Opposition). A copy of the demand letter was sent to First Commercial Bank and Fukuya.

On June 5, 2008, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on May 1, 2008 and June 1, 2008. The letter also demanded interest on the delinquent rent owed on April 1, 2008 and not paid until May 22, 2008. (See, Exhibit "S" attached to the Opposition). A copy of the demand letter was sent to First Commercial Bank and Fukuya.

On July 17, 2008, Defendant sent another five day Notice to Pay or Quit to Plaintiff which demanded that Plaintiff pay past due rent in the amount of $21,565.83 for May 1, 2008 rent and $21,565.83 for June 1, 2008 rent. (See, Exhibit "T" attached to the Opposition). The notice was also addressed to certain sub-tenants listed in Attachment "A" to the notice. Attachment "A" to the notice contained a list of eleven businesses, presumably Plaintiff's sub-tenants at the Fountain Plaza Building. The Notice to Pay Rent or Quit showed, on the bottom of the page, a copy going to First Commercial Bank.

On July 17, 2008, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on July 1, 2008. (See, Exhibit "U" attached to the Opposition). A copy of the demand letter was sent to First Commercial Bank. On August 5, 2008, Defendant sent another Delinquent Rents Under Lease from Cobblestone Square, Inc. demand letter to Plaintiff for rent owed on August 1, 2008 and for interest on the delinquent rent owed on May 1, 2008 and June 1, 2008, which was not paid until July 23, 2008.

(See, Exhibit "V" attached to the Opposition). A copy of the demand letter was sent to First Commercial Bank.

## DISCUSSION

The Court has jurisdiction pursuant to Title 7 of the Guam Code Annotated (G.C.A.) § 3105.

### A. Legal Standard for Motion for Summary Judgment

Rule 56 of the Guam Rules of Civil Procedure governs a motion for summary judgment. See, Guam R. Civ. P. 56(c). The Supreme Court of Guam has interpreted Rule 56 as follows:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. There is a genuine issue, if there is sufficient evidence which establishes a factual dispute requiring resolution by a fact-finder. Also, the dispute must be as to a material fact, which is a fact that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.

Guam Pacific Ent., Inc. v. Guam Poresia Corp., 2007 Guam 22 ¶8 (citations and quotation marks omitted).

When ruling on a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences that can be drawn from those facts. Bank of Guam v. Flores, 2004 Guam 25 ¶ 28. The court must also resolve any factual inconsistencies in favor of the non-moving party. Id. Finally, a court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 US 317, 322-23 (1986).

## B. BREACH OF CONTRACT

A lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises. See, Beckett v. City of Paris Dry Goods Co., 96 P.2d 122, 124 (Cal. 1939); Valley Investments L.P. v. BancAmerica Commercial Corp., 106 Cal. Rptr. 2d 689, 694 (Cal. Ct. App. 2001). This dual character serves to create two distinct sets of rights and obligations- one comprising those growing out of the relation of landlord and tenant, and said to be based on the "privity of estate," and the other comprising those growing out of the express stipulations of the lease, and so said to be based on "privity of contract." Medico-Dental etc. Co. v. Horton & Converse, 132 P. 2d 457, 462 (Cal. 1942); Syufy Enterprises v. City of Oakland, 128 Cal. Rptr. 2d 808, 822 (Cal. Ct. App. 2002). Plaintiff has filed a Complaint in this matter alleging in the first cause of action, a breach of contract on the part of Defendant. Plaintiff alleges that the breach occurred when Defendant served a three-day Notice to Pay Taxes or Quit, based upon Plaintiff's failure to pay taxes, rather than a 15-day notice, as required in Paragraph 13 of the Lease.

In the Motion for Partial Summary Judgment Plaintiff asserts that it has met all of the essential elements required to prevail on summary judgment for breach of contract. To succeed on a cause of action for a breach of contract, Plaintiff is required to prove: (1) the existence of a contract; (2) Plaintiff's performance of the contract, or excuse for nonperformance; (3) Defendant's breach; and (4) the resulting damage. First Commercial Mortgage Co. v. Reece, 108 Cal. Rptr. 2d 23, 33 (Cal. Ct. App. 2001). This Court finds that based on the briefings and

pleadings thus far in the record, Plaintiff fails to meet the second and third essential elements required to prevail on a motion for summary judgment for breach of contract.

The second element required to prevail on a breach of contract action requires Plaintiff's continuing performance or excuse for nonperformance of the Lease in this matter. This Court finds from the pleadings and Exhibits attached to the Opposition that Plaintiff failed to perform under the terms of the Lease, well before Defendant served the 3-day Notice to Pay Taxes or Quit. Exhibit "B" to the Opposition clearly shows that Plaintiff failed to pay portions of the rent due under the Lease as far back as November 5, 2005 and up to December, 2006. The failure on Plaintiff's part to pay the rental amounts owed necessitated Defendant's filing of a Notice to Pay Rent or Quit on January 9, 2007. Plaintiff also failed to perform under the express terms of the Lease, by failing to pay property taxes assessed upon improvements to the property for the calendar year 2005, that were payable in February and April 2006. In the Motion for Partial Summary Judgment and at the hearing on this matter, Plaintiff failed to present any reasons, justifications or excuses for its' failure to timely pay rent or to timely pay the property taxes that were due on April, 2006.

A bedrock principle of contract law is that he who seeks to enforce a contract must show that he has complied with all conditions and agreements of the contract on his part to be performed. Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005); Harrison v. Cook, 29 Cal. Rptr. 269, 271 (Cal. Ct. App. 1963). A party complaining of a breach of contract is not entitled to recover, therefore, unless he has fulfilled his obligations. Pry Corp. of America v. Leach, 2 Cal. Rptr. 425, 429-430 (Cal. Ct. App. 1960). It is elementary that a party may not insist upon performance of a contract when he himself is in default under the contract. Andrews v. Horton, 47 P.2d 496, 498 (Cal. Ct. App. 1935). A party's own non-performance of a contract

will defeat his claim against the other contracting party for breach of contract. <u>Tzu Chien Chen v. Thomas & Betts Corp.</u>, 268 Fed. Appx. 508, 511; 2008 WL 510409 (9th Cir. 2008); citing to, 1 Witkin, *Summary of California Law (10th ed.): Contracts* § 848, at 935 (2005) ("The plaintiff must be free from substantial default in order to avail himself or herself of the remedies for the defendant's breach. Hence, the plaintiff must plead and prove performance ... or an excuse for performance.")

El Jalapeno Mexican Food, L.L.C. v. Rodgers, 2005 WL 3579056 (Va. Cir. Ct., 2005), concerned a lease agreement governing commercial premises. Under the terms of the lease agreement, the plaintiff, as Lessee, was required to pay rent by the first day of each month. Plaintiff failed to pay rent for three consecutive months and the defendant, as the Lessor, locked Plaintiff out of the premises. Plaintiff sued for damages for the alleged ouster. The court ruled that the failure to pay any rent is a material breach that goes to the very root of the contract. <u>Id.</u> at *1. The court held that since plaintiff committed the first breach of the contract by failing to pay the rent, which goes to the very root of the contract, plaintiff was not entitled to enforce the contract. <u>Id.</u>

In the instant matter, the terms of the Lease expressly provides that rent is due in advance on the first day of each month. (See, Paragraph 3(b), pg. 3 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment). Paragraph 3(d) of the Lease also sets forth that "[i]f default shall be made by Lessee in the payment of the rent herein reserved, and that default shall continue for 30 days after notice thereof in writing to Lessee then Lessee shall be in default of this Lease without further notice." (See, Section 3(d), pg. 3-4 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment). The third paragraph of Paragraph 5 of the Lease requires Plaintiff, as the Lessee, to pay all taxes that may be assessed and levied by any

governmental authority on the value of future improvements in excess of the unimproved value of the property. (See Paragraph 5, pg. 5 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment). Paragraph 12 of the Lease sets forth the conditions within which a default will be found. The first sentence in that Paragraph sets forth that: "[t]ime is of the essence and Lessee shall automatically be in default of this lease" and then lists the failure to pay rent or taxes within thirty days after the due date, as a basis for automatic default. (See, Paragraph 12 (a), pg. 13 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment.)

Based upon the clear and plain terms of the Lease, Plaintiff was in default for both the failure to pay taxes and rent well before the three-day Notice to Pay Taxes or Quit was served by Defendant. To avoid default under the express terms of the Lease, Plaintiff was required to pay both the rent and taxes within thirty days after the due date. Plaintiff was in default under the terms of the Lease in May, 2006 for failure to pay the taxes within thirty days after the due date. Plaintiff was in default under the terms of the Lease for failure to pay the rent within thirty days, as far back as December, 2005. (See, Exhibit "B" to the Opposition). When Plaintiff failed to pay either the taxes or rent within thirty days, Plaintiff was in default of the Lease.

As to Plaintiff's performance or excuse for non-performance of the contract, the record contains substantial evidence that Plaintiff failed to timely pay the taxes owed and pay rent. These failures clearly place Plaintiff in default of the Lease well before Defendant served the three-day Notice to Pay Taxes or Quit. It is also noteworthy to point out that Plaintiff continues to be in default under the terms of the Lease, even after the filing of the present action. Exhibits C to V to the Opposition clearly demonstrate Plaintiff's continuing failure to perform under the terms of the Lease. Plaintiff fails to meet the second essential element, performance of the

Lease, or excuse for nonperformance and is not entitled to summary judgment for an alleged breach of contract.

Plaintiff's failure to meet the second essential element for a breach of contract action alone justifies this Court's denial of the Motion for Partial Summary Judgment. The Court will however, also address the third essential element to prevail on a breach of contract action, Defendant's alleged breach. In the Motion for Partial Summary Judgment, Plaintiff argues that Defendant was required under Paragraph 13 of the Lease to give Plaintiff a 15-day notice prior to termination of the Lease for alleged defaults, such as the nonpayment of taxes. Plaintiff asserts that the three-day Notice to Pay Taxes or Quit served by Defendant for the failure to pay taxes, undisputedly breached the terms of the Lease and Plaintiff is entitled to summary judgment as a matter of law.

Defendant argues that the second sentence found in Paragraph 13 of the Lease, contractually permits the Lessor to elect between the 15-day notice or "other rights and remedies at law or equity." Defendant contends that based upon that sentence found in Paragraph 13 of the Lease, Defendant exercised its other rights and remedies under Guam's unlawful detainer statute, 21 G.C.A. § 21103, and served a three-day notice based upon Plaintiff's failure to pay taxes. Defendant argues that the three-day notice was fully authorized by Paragraph 13 of the Lease, there was no breach of the Lease and Plaintiff's motion on this claim should be denied.

The dispute concerns how the language found in Paragraph 13 of the Lease is to be interpreted. Paragraph 13 of the Lease states the following:

**13. <u>REMEDIES:</u>**

Upon the occurrence of any event of default specified in Section 12, Lessor may terminate this lease upon giving fifteen (15) days prior written notice. The remedies herein shall not prejudice Lessor's other rights and remedies at law or equity. Provided,

however, that no notice shall be required to terminate this lease for nonpayment of rent other than as provided in paragraph 3(d).

See, Paragraph 13, pg. 13 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment.

Guam statutes provide guidance as to how contracts are to be interpreted. Specifically 18 G.C.A. § 87104 sets forth that: "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (See, 18 G.C.A. §87104). In addition, 18 G.C.A. §87105 directs that: "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however to the other provisions of this Chapter." (See, 18 G.C.A. §87105). Also, 18 G.C.A. § 87110 sets forth that: "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (See, 18 G.C.A. §87110).

Guam case law likewise sets forth that a court need not go beyond the four corners of the contract to enforce the terms as written. See, Guam Untied Warehouse Corp. v. DeWitt Transp. Servs., 2003 Guam 20 ¶ 24. A court is merely required to interpret the contract as written, in light of the plain language and the reasonable expectations of the intent of the parties to a contract is generally, and whenever possible, restricted by the plain meaning of the contract terms. Camacho v. Camacho, 1997 Guam 5 ¶ 33; Natl Union Fire Ins. Co. of Pittsburgh, Pa. v. Guam Hous. & Urban Renewal Auth., 2003 Guam 19 ¶ 36. The words in a contract are generally to be accorded their ordinary meanings, unless specifically stated otherwise in the contract. See, Camacho, 1997 Guam 5 ¶ 33.

In Wasson v. Berg, 2007 Guam 16, the Supreme Court of Guam addressed the issue of whether the trial court erred in granting summary judgment based upon an interpretation of the terms and conditions of a price reduction clause found in an Asset Purchase Agreement. The price reduction clause allowed for a $50,000 reduction in the purchase price of certain medical machinery in the event that a competing machine was installed in the Territory of Guam within a two year period. The Court, looking to the four corners of the Asset Purchase Agreement and the express terms, found that the lower court erroneously interpreted the term "installed" in the price reduction clause, and erroneously concluded that the clause implied a causation requirement. Id. at ¶ 36. The Court set forth that in applying the "plain meaning" or traditional approach to contract interpretation, that one could not find from the four corners of the contract that the term "installed" was intended to mean functioning or competing, as the lower court found. Id. The Court set forth that words in a contract are generally to be accorded their ordinary meanings, unless specifically stated otherwise in the contract. Id. at ¶26. The Court also found that while there was no cross motion for summary judgment filed by the Appellant-Defendant, that as a matter of law all of the elements of the price reduction clause had been satisfied. Id. at ¶37.

Under both Guam statutes and case law, in construing a contract, this Court is directed to begin with the language of the contract and, if the language is plain and clear, the Court will enforce the terms as written. This Court finds that the plain meaning of Paragraph 13 of the Lease, read as a whole with the entire Lease, contractually permits the Lessor to elect other rights and remedies at law or equity based upon a default of the Lease, other than for nonpayment of rent. The provisions of the entire Lease clearly set forth that the only exception to this election of remedies is for the nonpayment of rent. The last sentence found in Paragraph 13 of the Lease clearly delineates this exception by stating that: "[p]rovided, however, that no notice shall be

required to terminate this lease for nonpayment of rent other than as provided in paragraph 3(d)". (See, Paragraph 13, pg. 13 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment). Paragraph 3(d) sets forth that: "[i]f default shall be made by Lessee in the payment of the rent herein reserved, and that default shall continue for thirty (30) days after notice thereof in writing to Lessee then Lessee shall be in default of this Lease without further notice." (See, Paragraph 3(d), pg. 3-4 of the Lease, attached as Exhibit "A" to the Motion for Partial Summary Judgment). The plain language of the Lease clearly sets forth that the only exception to either the fifteen-day notice or the election to use other rights and remedies is for the nonpayment of rent.

Plaintiff's position that the Lease requires a fifteen–day notice prior to termination for nonpayment of taxes is simply not found within the four corners of the Lease. Plaintiff asserts repeatedly in the Motion for Partial Summary Judgment that the Lease clearly sets forth that in cases of termination, that a fifteen-day written notice is required. Plaintiff asserts that in cases of termination, there are no other rights and remedies available to the Lessor. In order to give some meaning to the second sentence found in Paragraph 13 Plaintiff asserts that, that sentence applies to some other defaults that might occur, other than termination. This interpretation by Plaintiff is not found within the plain language of the Lease. If the Parties had intended to limit all termination notices to a fifteen-day notice only so as to allow Plaintiff the opportunity to cure the default, then the Lease would have clearly stated so. If the Parties had intended to limit the second sentence found in Paragraph 13 to all other defaults, other than termination, then the Lease would have clearly stated so. The Lease does not.

This Court finds that the language found in Paragraph 13 of the Lease is unambiguous. The Court further finds that in applying the plain meaning or traditional approach to contract

interpretation, that Paragraph 13 of the Lease clearly permits the Defendant to choose between a fifteen-day notice or "other rights and remedies at law or equity" upon the occurrence of any default, other than the non-payment of rent. Plaintiff's claim that Defendant breached the Lease by electing to serve a three-day notice to quit, pursuant to Guam's unlawful detainer statute, fails. While there is no cross motion for summary judgment filed by Defendant here, this Court finds that as a matter of law, using a plain reading of the Lease and Paragraph 13, that the Lessor is entitled to elect between a fifteen-day notice or "other rights and remedies at law or equity" upon the occurrence of any default by the Plaintiff, other than the non-payment of rent.

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment on the breach of contract action is DENIED.

## C. SLANDER OF TITLE

Plaintiff's Complaint alleges in the second cause of action, a claim for slander of title. Plaintiff argues that Defendant's Notice to Pay Taxes or Quit is a publication which falsely states that Plaintiff was required to vacate the premises within three (3) days in the event of the failure to pay property taxes. Plaintiff also argues that the words "TAX SOLD PROPERTY" stamped twice on the Revenue & Taxation document, attached to the Notice to Pay Taxes or Quit, is a false statement in that the property has never been sold or conveyed to the Government of Guam or a third party for non-payment of taxes. Plaintiff claims that Defendant's action in issuing the Notice to Pay Taxes or Quit, with the attached Revenue & Taxation document was done with knowledge of its falsity and defamatory nature, or was done with reckless disregard of whether the notice and attachment were false and defamatory, or was done negligently in that Defendant failed to ascertain whether the notice and attachment published were false. Plaintiff also argues

that Defendant's false publication affected Plaintiff's relationship with First Commercial Bank and Plaintiff's sub-tenants at the Fountain Plaza Building.

In the Motion for Partial Summary Judgment, Plaintiff asserts that it has met all of the essential elements required to prevail on summary judgment for slander of title. The essential elements for a slander of title action are: (1) a publication; (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss. Howard v. Schaniel, 169 Cal. Rprtr. 678, 682 (Cal Ct. App. 1980). The California Supreme Court sets forth that an action for slander of title, is "best stated as follows: 'One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.' " Gudger v. Manton, 134 P.2d 217, 220 (Cal. 1943). This Court finds that based on the briefings and pleadings thus far in the record, Plaintiff fails to meet the second and third essential elements required to prevail on a motion for summary judgment for slander of title.

The second element required to prevail on a slander of title action requires Plaintiff to prove that Defendant published matter which was without privilege or justification. In the Opposition, Defendant argues that the Notice to Pay Taxes or Quit, along with the attached Revenue & Taxation document is absolutely privileged under 19 G.C.A. §2105 (b). Defendant argues that in the alternative, the Notice to Pay Taxes or Quit, along with the attached Revenue & Taxation document, was protected under the "common interest" privilege found in 19 G.C.A. § 2105 (c).

As pointed out by Defendant in the Opposition, 19 G.C.A. §2105, which enumerates the types of communications that are privileged, is derived from California Civil Code § 47. 19 G.C.A. § 2105 (b) states in relevant part that:

**§ 2105. Privileged Communications.**

A privileged publication is one made:

(b) In any (1) legislative or (2) judicial proceedings, or (3) in any other official proceeding authorized by law.

19 G.C. A. § 2105 (b).

This litigation privilege is absolute and applies without regard to a proponent's motives, morals, ethics or intent. See, Silberg v. Anderson, 786 P. 2d 365, 370-371 (Cal. 1990). Guam law specifically sets forth that service of a notice to quit is a legally required prerequisite to the filing of an unlawful detainer action. See, 21 G.C.A. § 21103 (c); Archbishop of Guam vs. G.F.G. Corp., 1997 Guam 12. As Defendant also points out in the Opposition, the California Supreme Court has held that a landlord's notice to quit or other eviction notice is a prelitigation communication that is absolutely privileged, when it relates to litigation that is contemplated in good faith and under serious consideration. Action Apartment Ass'n v. City of Santa Monica, 163 P. 3d 89, 102 (Cal., 2007).

In Action Apartment Ass'n v. City of Santa Monica, 163 P. 3d 89 (Cal. 2007) the California Supreme Court considered whether the "litigation privilege" of California Civil Code § 47 (b) preempted a local municipal ordinance that prohibited a landlord from maliciously serving a notice of eviction or bringing any action to recover possession of a rental unit without a reasonable factual or legal basis. The Court concluded the privilege of § 47 (b) preempted entirely the provision regarding filing an action to recover possession, but preempted only partially the provision regarding serving a notice of eviction. Id. at 101. With respect to the latter,

the Court noted the litigation privilege applies only to a publication "made as part of a 'judicial proceeding' " and that a "notice of eviction is a communication regarding prospective litigation, and, as such, it is not *necessarily* part of a judicial proceeding." Id. at pg. 102. The California Supreme Court held that a prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. Id.

In the instant matter, the service by Defendant of the three-day Notice to Pay Taxes or Quit, along with the attached Revenue & Taxation document, is a legally required prerequisite to the filing of an unlawful detainer action. (See, 21 G.C.A. § 21103; Archbishop of Guam vs. G.F.G. Corp., 1997 Guam 12.). The Cowan Declaration asserting Defendant's intention to file the unlawful detainer action, while self-serving, nonetheless provides competent evidence that the Notice to Pay Taxes or Quit was served in serious contemplation of litigation. Paragraphs 9 through 11 of the Cowan Declaration likewise provides competent evidence that Defendant would in fact pursue an unlawful detainer action upon the filing of a notice to quit and failure on Plaintiff's part to cure. As Paragraph 10 of the Cowan Declaration points out, a Complaint for Unlawful Detainer was filed on June 21, 2007 by Defendant based upon Plaintiff's failure to pay rent. The pleadings and record thus far in this case clearly provides this Court with substantial evidence demonstrating that the three-day Notice to Pay Taxes or Quit was served in good faith and in serious contemplation of litigation.

In the Reply however, Plaintiff argues that Notice to Pay Taxes or Quit, along with the attached Revenue & Taxation document was not absolutely privileged. Plaintiff points out that 21 G.C.A. § 21103 (c) requires that the three-day notice to cure be given to any sub-tenants in actual occupation of the premises. Plaintiff argues that Defendant's failure to serve the sub-tenants, as listed in the Notice to Pay Taxes or Quit, unequivocally shows that the unlawful

detainer litigation was not contemplated in good faith or seriously considered. Plaintiff argues that the lack of good faith intention to actually pursue the litigation destroys whatever litigation privilege Defendant may have had.

The Cowan Declaration sets forth in Paragraph 6 that the three-day Notice to Pay Taxes or Quit was not delivered or mailed to the sub-tenants. No other explanation is given as to why the sub-tenants were not served. This Court finds that there could be a whole host of reasons as to why the sub-tenants were not served in this matter. Arguably, Defendant's counsel could have inadvertently forgotten to serve them or mistakenly thought that the sub-tenants need not be served in this particular matter. The fact that Defendant does not address this in the Opposition and does not present any evidence or law which conclusively demonstrates that although the sub-tenants were not serve, the Notice to Pay Taxes or Quit was still served in good faith and serious contemplation of litigation does not automatically destroy the litigation privilege.

Plaintiff presents no other evidence that Defendant or Defendant's counsel never intended to bring the action or that the action was not contemplated in good faith. All Plaintiff presents is an inference that is based upon Defendant's failure to serve the sub-tenants a copy of the Notice to Pay Taxes or Quit. If Defendant's failure to serve the sub-tenants were sufficient to support an inference that Defendant did not intend to litigate the matter, the purpose of the privilege would be severely undermined. Any notice to quit that an attorney may write on behalf of a client would carry the potential for tort claims and the need for a trial to overcome an inference that there was no serious intention to litigate because of an asserted failure to serve the sub-tenants. That inference is not enough for this Court to deny the claim of an absolute privilege in this matter and grant the Motion for Partial Summary Judgment. In short, genuine issues of material fact concerning why Defendant failed to serve the sub-tenants with the 5-day Notice to

Pay Taxes or Quit still exist for purposes of future motions or trial. This Court finds that Plaintiff has not made a sufficient showing for purposes of summary judgment to defeat Defendant's potential claim of absolute privilege. Plaintiff has failed to meet the second essential element required to prevail on a motion for summary judgment for slander of title.

Plaintiff's failure to meet the second essential element for a slander of title action alone, once again, justifies this Court's denial of the Motion for Partial Summary Judgment. This Court will however, also address the third essential element required to prevail on a slander of title action, publication of a false statement. Plaintiff first argues that the false publication is found in the Notice to Pay Taxes or Quit issued by Defendant. Plaintiff argues that Defendant issued the Notice to Pay Taxes or Quit which stated falsely that Plaintiff's tenancy would be terminated within three days if the property taxes were not paid on the Property. Plaintiff argues that Defendant knew the statement was false considering that Paragraph 13 of the Lease allows for a 15-day notice prior to termination.

This Court has set forth in detail above, that under the plain language of the Lease, Defendant is entitled to elect between a 15-day notice or other rights and remedies at law or equity upon the occurrence of any default by Plaintiff, other than the nonpayment of rent. This Court finds from the pleadings on file that Defendant had not paid the property taxes that were due on the property for the calendar year of 2005, that were payable in February and April of 2006, at the time the Notice to Pay Taxes or Quit was issued. Since Defendant's election to issue a three-day Notice to Pay Taxes or Quit was authorized under the terms of the Lease and Plaintiff had not paid the taxes, there is no false publication in this matter. Plaintiff fails to meet the third element necessary to prevail on a slander of title action.

Plaintiff next argues that the Revenue & Taxation document attached to the Notice to Pay Taxes or Quit was a false publication. Plaintiff argues that the words "Tax Sold Property" which was stamped twice on the Revenue & Taxation document contained a false statement. Plaintiff argues that Defendant must have known that the property was not sold for non-payment of taxes or at the least acted in reckless disregard of the truth or falsity of the statement. Plaintiff has failed to show that the property was not in fact sold for non-payment of taxes. Plaintiff submits the Declaration of Ronald Su In Support of Gin Hai Shan Partnership's Motion for Partial Summary Judgment (hereinafter "Ronald Su Declaration"). In Paragraph 6, Ronald Su states that: "[t]o my knowledge, the property has never been sold or conveyed to the Government of Guam or a third party for non-payment of taxes". (See, Paragraph 6, Ronald Su Declaration attached to the Motion for Partial Summary Judgment). The term "to my knowledge" does not support a claim that the Revenue & Taxation document was indeed false. Plaintiff is the moving party in this action and has the burden of proving the essential elements for a slander of title action. Plaintiff has failed to show that the Revenue & Taxation document is a false publication. Plaintiff fails to meet the third element necessary to prevail on a slander of title action.

Based on the foregoing, Defendant's Motion for Partial Summary Judgment on the slander of title action is DENIED.

**D. LIBEL**

Plaintiff's Complaint alleges in the third cause of action, a claim for libel. Title 19 G.C.A. § 2103 sets forth that:

> **§ 2103. Libel, What.**
> *Libel* is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

19 G.C.A. § 2103

Plaintiff's allegations to support an action for libel, mirror those allegations for Plaintiff's slander of title claim. Moreso, Plaintiff argues that Defendant's publication of the Notice to Pay Taxes or Quit contained the false statement that Plaintiff was required to vacate the premises within three days in the event of the failure to pay the property taxes. Plaintiff also argues that the words "TAX SOLD PROPERTY" stamped on the Revenue and Taxation document is a false statement.

In the Motion for Partial Summary Judgment Plaintiff asserts that it has met all of the essential elements required to prevail on summary judgment for libel. As Plaintiff points out in the Motion for Partial Summary Judgment, like the elements for slander of title, the essential elements for libel are (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. Taus v. Loftus, 151 P.3d 1185, 1209 (Cal., 2007).

This Court finds that Plaintiff fails to meet the second and fourth essential elements required to prevail on a motion for summary judgment for libel. As to the second element, the alleged false statements, this Court's reasoning set forth above in the slander of title discussion is equally applicable. As set forth above, Plaintiff is the moving party in this action and fails to establish that the words "TAX SOLD PROPERTY" stamped on the Revenue & Taxation document is a false publication.

As to the fourth element, the absence of a privilege, this Court's reasoning set forth above in the slander of title discussion is once again applicable. As set forth above, Plaintiff is unable to make a sufficient showing for purposes of summary judgment to defeat Defendant's potential claim of absolute privilege.

Based on the foregoing and the Court's reasoning set forth in the slander of title discussion, Defendant's Motion for Partial Summary Judgment on the libel action is DENIED.

## E. DECLARATORY RELIEF

Plaintiff argues that an actual controversy has arisen among the parties regarding their respective rights and obligations under the Lease, which requires this Court to issue a Declaratory Judgment. Specifically, Plaintiff asks this Court to issue a judgment declaring that Defendant must first comply with the 15-day notice requirement, as set forth in Paragraph 13 of the Lease, as a precondition to issuing a notice to perform or quit as permitted under Guam's unlawful detainer statutes.

Title 7 G.C.A. § 26801 authorizes actions for declaratory relief. It provides that:

### § 26801. Declaratory Relief.

Any person interested under a deed, will, or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over, or upon property, or with respect to the location of the natural channel of a water course, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the court having jurisdiction for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract. He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force of a final judgment. Such declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.

7 G.C.A. § 26801.

Declaratory judgments are equitable in nature and are a binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement.

Executive View Estate, Inc. v. Look, Civ. No. 93-00062A; 1994 WL 129748 at *2 (D. Guam App. Div. 1994) (citations omitted).

Pursuant to Guam law, in order to pursue a declaratory judgment action there must exist an actual controversy relating to the legal rights and duties of the respective parties. This Court finds that there is no actual controversy in this matter that requires this Court to issue a declaratory judgment. Plaintiff claims that Defendant is required under the express provisions of the Lease, as set forth in Paragraph 13 of the Lease, to issue a fifteen-day notice prior to termination of the Lease based upon Plaintiff's default in failing to pay taxes when due. Plaintiff argues that prior to filing an unlawful detainer action or sending a notice to perform or quit under Guam's unlawful detainer statutes, Defendant is required to provide a fifteen-day notice. Plaintiff is in essence asking this Court to issue a Declaratory Judgment that would rewrite the provisions of the Lease.

A court does not have the power to create for the parties a contract which they did not make and cannot insert language which one party now wishes were there. Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman, 77 Cal. Rptr. 2d 479, 483 (Cal. Ct. App. 1998). When the language of a contract document is unambiguous, courts are not free to restructure the agreement. Carr Business Enterprises Inc. v. City of Chowchilla, 82 Cal. Rptr. 3d 135, 138 (Cal. Ct. App. 2008). No court has the power to make for the parties to a written instrument, a contractual arrangement which they did no see fit to make. Pauley v. Faucett, 269 P. 2d 89, 92 (Cal. Ct. App. 1954).

This Court has set forth in detail above, that as a matter of law, the plain and unequivocal provisions of the Lease allows the Defendant to choose between a fifteen-day notice or other rights and remedies at law or equity upon the occurrence of any default by Plaintiff, other than

the non-payment of rent. Based upon this Court's finding above, there is no actual controversy that would require this Court to issue a declaratory judgment. As such, Plaintiff's Motion for Declaratory Relief is hereby DENIED.

**CONCLUSION**

Based upon the foregoing, Plaintiff's Motion for Partial Summary Judgment for Breach of Contract, Slander of Title, Libel, and Declaratory Relief is hereby DENIED in its' entirety.

Defendant's Rule 56(f) affidavit requesting more time to allow supplemental briefing and time is rendered moot by the Court's ruling.

So ORDERED this day of ___3___ June, 2009.

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

JUN 08 2009